IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                               Cr. No. 01-174 JP

VIRGIL BROWN and JAMES YAZZIE,

        Defendant.

## MEMORANDUM OPINION AND ORDER

        On July 23 through July 25, 2001, the Court conducted a jury trial on the charge that the Defendants had committed the crime of assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(6). At the close of the Government's case, and again at the close of the Defendants' case, the Defendants moved for a Judgment of Acquittal, under Rule 29 of the Federal Rules of Criminal Procedure. (Tr. at 294, 329). The Court reserved decision on the Defendants' motion and submitted the case to the jury. (Tr. at 332). In addition to instructing the jury on the charge of assault resulting in serious bodily injury, the Court provided instructions for the lesser included offenses of assault by striking, beating, or wounding, under 18 U.S.C. § 18 U.S.C. § 113(a)(4), and simple assault, under 18 U.S.C. § 113(a)(5). (Tr. at 352-53). The jury found the Defendants guilty of assault resulting in serious bodily injury. (Tr. at 401).

        Under Rule 29(a) of the Federal Rules of Criminal Procedure, a court should "order the entry of judgment of acquittal of one or more offenses charged in the indictment . . . if the evidence is insufficient to sustain a conviction of such offense or offenses." The Tenth Circuit has instructed that

"the trial court, in considering a motion for acquittal" must "view the evidence in the light most favorable to the government and then determine whether there is substantial evidence from which a jury might properly find the accused guilty beyond a reasonable doubt." *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982). While stressing that "[t]he jury, as fact finder, has discretion to resolve all conflicting testimony, weigh the evidence, and draw inferences from the basic facts to the ultimate facts," the Tenth Circuit has observed that "'[a]n inference is reasonable only if the conclusion flows from logical and probabilistic reasoning.'" *United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998), quoting *United States v. Jones*, 44 F.3d 860, 865 (10th Cir. 1995).

This case arises from events that occurred on October 30, 2000. The Defendants, Virgil Brown and James Yazzie, encountered an acquaintance named Leroy Thompson at a bar near Thoreau, New Mexico. Mr. Thompson agreed to go for a ride in the Defendants' car. The Defendants drove to a wooded area. Mr. Thompson and the Defendants were all intoxicated at this time. The Defendants wanted Mr. Thompson, a roadman in the Native American Church, to perform a blessing for them. Mr. Thompson declined, and the Defendants became angry with him. The Defendants verbally threatened Mr. Thompson, physically attacked him, and ultimately abandoned him when they drove away from the area. At some point while he was at the wooded area, Mr. Thompson suffered a compound (open) ankle fracture.

The indictment charges the Defendants with the crime of assault resulting in serious bodily injury, in violation of 18 U.S.C. § 113(a)(6). At trial, the Court instructed the jury that:

> In order to sustain its burden of proof for the crime of assault resulting in serious bodily injury as charged in the indictment, the government must prove each of the following four essential elements beyond a reasonable doubt:
> First: The defendant intentionally assaulted Leroy Thompson.

> Second: As a result of this assault, Leroy Thompson suffered serious bodily injury.
>
> Third: The assault occurred in Indian Country and within the exterior boundaries of the Navajo Reservation; and
>
> Fourth: The defendant is an Indian.

(Tr. at 351-52). The Defendants contend that the Government has failed to meet its burden of proof as to the second element. Although they do not dispute that Mr. Thompson's ankle injury constituted a "serious bodily injury," the Defendants challenge whether the Government showed beyond a reasonable doubt that the injury resulted from the Defendants' actions.

The parties suggest, and this Court agrees, that in 18 U.S.C. § 113(a)(6)– the statutory provision addressing "assault resulting in serious bodily injury"– the term "resulting" establishes a causation requirement. The statute requires that there be a causal link between the assault and the injury suffered by the victim. "Causation in criminal law has two requirements: cause in fact and proximate cause." *U.S. v. Mendoza*, 244 F.3d 1037, 1045 (9th Cir. 2001). Here, the Defendants' arguments seem to focus on the question of cause in fact. They maintain that "[e]ven viewed in the light most favorable to the verdict, none of the evidence at trial showed how Mr. Thompson broke his leg."

At trial, the government did not present the jury with a particularly helpful description of how Mr. Thompson's ankle injury occurred. The evidence most favorable to the Government was Mr. Thompson's testimony that he had been facing away from the Defendants, looking into the distance and hoping that the Defendants would calm down, when he felt a punch to the left side of his face and a push on his back. Mr. Thompson then fell forward to the ground, landing on his chest and part of his face. When he attempted to jump back up, he found that he was unable to stand. He felt his bone

stick into the ground, he noticed that his leg was broken, and he fell back down.

Mr. Thompson did not testify that he felt his bone break as he fell, or that he heard the bone break, or that he experienced acute pain that began with or occurred during his fall. He did not testify that his leg struck anything on falling or that his foot or lower leg was restrained so that his upper body falling forward would create a leverage force on his lower extremity at the point of fracture. Finding that the Defendants' assault caused Mr. Thompson's ankle injury depends on the inference that because Mr. Thompson could stand prior to being pushed, and noticed that his ankle was broken after being pushed, his ankle must have broken in the fall. Of course, juries are free to rely on inferences in interpreting the evidence. This Court instructed the jury that "you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience" and that "you may make deductions and reach conclusions which reason and common sense leads you to draw from the facts which have been established by the evidence in the case." (Tr. at 357).

The problem in this case is that the inference at issue– that simply being pushed resulted in an open fracture of the lower leg– seems to run contrary to common sense and experience. Dr. Frechette, the orthopedic surgeon who treated Mr. Thompson, testified that "on a scale of one to ten, ten being a mangled injury where the patient would most likely lose his foot, this was probably an eight, quite severe but still salvageable." (Tr. at 103). Mr. Thompson's tibia bone protruded two inches beyond the skin. Common experience suggests that some aggravating factor, beyond being simply pushed forward, must account for the severity of this ankle injury. However, Mr. Thompson did not indicate that his foot had been stuck at the time that he was pushed, or that his leg was kicked, or that there was some other force contributing to the trauma to his ankle.

4

Mr. Thompson's rather undetailed account of how his ankle broke left the jury to guess at whether the assault he described could have produced the type of injury he suffered. If the Government had presented expert medical testimony explaining that Mr. Thompson's ankle injury was consistent with falling down in the way he described, it may have allowed the jury to conclude that the causation element had been established beyond a reasonable doubt. However, the Government did not ask Dr. Frechette whether being pushed down as Mr. Thompson described could have resulted in Mr. Thompson's compound fracture, nor did it produce any other medical expert testimony on this subject at trial. The Government has attempted to retroactively fashion an expert opinion on causation in this case, asserting during closing argument and in its brief on the motion for judgment of acquittal that Dr. Frechette's observations of Mr. Thompson's injuries support Mr. Thompson's version of how his ankle broke.[1] However, Government counsel's contentions about ankle injury mechanics, a topic not within the range of knowledge of a layperson, do not amount to an expert opinion that Mr. Thompson's injuries likely resulted from the kind of fall he described.

Compounding the problems relating to the Government's insufficient proof on the issue of causation are the indications that at one time Mr Thompson believed that he had injured his ankle by falling into a ditch. Mr. Thompson testified at trial that at the time he was interviewed by Deputy Sheriff Edmund Yazzie, apparently on October 30, 2000, the day of the injury, or soon thereafter, "I

---

[1] See, e.g., Trial Tr. at 392; Government's Response to Defendants' Brief in Support of Rule 29 Motion for Judgment of Acquittal at 6, fn. 1 (Counsel for the government states that a demonstration during trial "showed that Mr. Thompson's right foot was going through a twisting motion as Mr. Thompson <u>was trying to break his fall</u> with his left leg and as he was falling to his right. Government's Exhibit 3, the x-ray of Mr. Thompson's ankle, shows the frontal view of the injury and shows the ankle twisted to the right. (Tr. 102, 104). Dr. Frechette described the foot as turned approximately 90 degrees to the right. (Tr. 102). This is consistent with Mr. Thompson's ankle being injured as he demonstrated.")

thought I fell in a ditch. Later on I went back out there and there was no ditch." (Tr. at 273-74). In addition, Dr. Frechette testified that when Mr. Thompson arrived at the hospital, "he told me that he had fallen in a ditch." (Tr. at 102). Charles Buck, the Emergency Medical Technician who transported Mr. Thompson to the hospital, testified that Mr. Thompson provided several different stories about what had happened to him, including that "he stepped in a hole and that's how he broke his ankle." (Tr. at 309).

As the Government emphasizes, the tasks of weighing conflicting evidence and evaluating witnesses' credibility belong to the jury, not the Court. In this case, the jury appears to have believed the version of events Mr. Thompson offered at trial. The Court points to the variation in Mr. Thompson's descriptions of how he broke his ankle only to compare the extent to which the explanations coincide with common sense and common experience. The wrenching motion or leveraged point force associated with tripping in a ditch would seem, on the basis of common sense, to be a likely cause of the type of severe ankle injury suffered by Mr. Thompson. In contrast, common experience suggests that simply falling forward would not result in an open ankle fracture. Additional evidence– such as an expert medical opinion– seems necessary in order to establish the element of causation.

The Government argues that "Mr. Thompson's ankle was broken as he was falling, or as he fell, or as he was getting up immediately after being assaulted," and it notes that the law "does not require the government to microscopically show 'how' the injury occurred." The Government may be correct in observing that the standard of proof does not mandate this degree of precision. However, in this case, the jurors were placed in the position of basing their guilty verdict on the greater offense on their assessment that the government's explanation of causation was a good possibility. As the Tenth

6

Circuit has pointed out, "[t]he evidence presented to support a conviction must be substantial; it must do more than raise a mere suspicion of guilt." *United States v. Taylor*, 113 F.3d 1136, 1144 (10th Cir. 1997). This Court finds that on the issue of causation, the Government may have raised a suspicion of guilt, but it fell short of establishing beyond a reasonable doubt that the Defendants' actions resulted in Mr. Thompson's severe ankle injury.

While the evidence in this case did not support the charge of assault resulting in serious bodily injury, it clearly supported a finding of guilt on the lesser included offense of assault by beating, striking, or wounding. The Defendants concede that the Government introduced evidence sufficient to support a conviction of this lesser offense. The parties agree that upon entering a Judgment of Acquittal as to the charge of assault resulting in serious bodily injury, this Court may enter a judgment of conviction as to the charge of assault by striking, beating, or wounding. See, e.g., *United States v. Dhinsa*, 243 F.3d 635, 674 (2nd Cir. 2001).

IT IS THEREFORE ORDERED THAT:

1) The Defendants' Motion for Judgment of Acquittal as to the charge of assault resulting in serious bodily injury, under 18 U.S.C. § 113(a)(6), is granted;

2) A judgment of conviction as to the lesser included offense of assault by striking, beating, or wounding, under U.S.C. § 113(a)(4), will be entered.

_____
CHIEF UNITED STATES DISTRICT JUDGE